99 P.3d 43

STATE of Arizona, Appellee,

v.

Todd M. WILLIAMS, Appellant.

No. 1 CA–CR 03–0640.

Court of Appeals of Arizona,
Division 1, Department A.

Oct. 26, 2004.

Terry Goddard, Attorney General, by Randall M. Howe, Chief Counsel, Criminal Appeals Section and Joseph T. Maziarz, Assistant Attorney General, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender, by Theresa M. Armendarez, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

WINTHROP, Judge.

¶ 1 Todd M. Williams ("Appellant") appeals his convictions for public sexual indecency to a minor and public sexual indecency. Appellant contends that insufficient evidence supports his convictions; that prior act evidence was improperly admitted pursuant to Rules 404(b) and (c) of the Arizona Rules of Evidence; and that the trial court erred when it denied his motion for mistrial or, in the alternative, his motion to strike testimony and admonish the jury. We have jurisdiction to decide Appellant's timely appeal pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) (2003), 13-4031 (2001), and 13-4033(A) (2001). For the reasons that follow, we affirm Appellant's convictions and sentences.[1]

## ANALYSIS

### I. Sufficiency of the Evidence

¶ 2 Appellant contends that insufficient evidence supports his convictions. In short, Appellant argues that the evidence was insufficient because, according to Appellant:

1. Five witnesses testified that they believed Appellant was home at or around the time of the incident;

2. There were discrepancies between the victims' description of the vehicle and the actual appearance of Appellant's vehicle; and

3. After the incident, one victim could not identify Appellant from a photographic lineup, and she only identified him after hearing the other victim identify him in court.

¶ 3 "We construe the evidence in the light most favorable to sustaining the verdict, and resolve all reasonable inferences against the defendant." *State v. Greene,* 192 Ariz. 431, 436, ¶ 12, 967 P.2d 106, 111 (1998) (citation omitted); *see also State v. Fulminante,* 193 Ariz. 485, 494, ¶ 27, 975 P.2d 75, 84 (1999) (stating that, in reviewing the record, we draw all reasonable inferences that support the verdict). As charged, the applicable provisions of A.R.S. § 13-1403 (2001) provide that a person commits public sexual indecency by intentionally or knowingly engaging in an act of "sexual contact" when another person is present and the defendant acts recklessly regarding whether the other person, as a reasonable person, would be offended or alarmed by the act. *See* A.R.S. § 13-1403(A)(1). If a defendant engages in such activity and is reckless whether a minor under the age of fifteen years is present, that defendant commits public sexual indecency to a minor. *See* A.R.S. § 13-1403(B).

¶ 4 On December 2, 2002, at approximately 4:20 p.m., the two victims, "A.L." and "A.S.," were walking home from school. A.L. was fourteen years old and A.S. was fifteen years old. As the victims stood on the corner of 30th Street and Roosevelt in Phoenix, Appellant drove past them. He eventually drove up to the corner and stopped beside them. When the victims looked inside Appellant's vehicle, they could see that his pants were down and he was masturbating.

¶ 5 The victims did not get Appellant's license number at that time. However, they recognized both Appellant and his vehicle when they saw him in the area the next day.

1. Appellant raises no issues regarding his sentences.

A.L. wrote down Appellant's license plate number and provided it to the police, who determined that the vehicle belonged to Appellant. Both victims identified Appellant as the person they had seen in the vehicle masturbating. The jury also heard evidence regarding how Appellant had engaged in the same conduct on four prior occasions.

¶ 6 Appellant's arguments regarding the sufficiency of the evidence go merely to weight and credibility. However, we do not weigh the evidence; that is the function of the jury. *See State v. Guerra,* 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989). "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto–Fong,* 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996) (quoting *State v. Scott,* 113 Ariz. 423, 424–25, 555 P.2d 1117, 1118–19 (1976)). "To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury." *State v. Arredondo,* 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987) (citation omitted). Although the record contains some conflicting evidence, it was for the jury to weigh the evidence and determine the credibility of the witnesses. *See State v. Cid,* 181 Ariz. 496, 500, 892 P.2d 216, 220 (App.1995). Given the record before us, we find the evidence sufficient to support Appellant's convictions.

## II. Admission of Evidence Pursuant to Rule 404(b)

¶ 7 Appellant also contends that the trial court abused its discretion by admitting evidence of prior acts pursuant to Rule 404(b) of the Arizona Rules of Evidence. The evidence concerns four prior incidents in which Appellant engaged in the same conduct as that charged in the instant case. We will refer to those prior incidents as the Julie C. incident, the Jennifer M. incident, the Jennalee L. incident, and the Robby R. incident.

### A. Factual Background

¶ 8 The Julie C. incident occurred on October 29, 1993. Julie was thirty-two years old at the time and was walking her seven year-old daughter home from school. As they crossed the street, Julie noticed a car waiting to turn and made eye contact with the driver. Once across the intersection, Julie and her daughter continued to walk, and the same car came up behind them, passed them, turned around, and parked on the side of the street on which they were walking. As Julie passed the car, she looked inside and saw that the driver had his pants down and was masturbating. The driver did not speak to Julie or her daughter. Julie wrote down the car's license plate number, and it was determined that the vehicle was registered to Appellant. On January 18, 1994, Julie identified Appellant from a photographic lineup.

¶ 9 At the June 6, 2003 pretrial hearing to determine the admissibility of the prior acts in the instant case, Julie could not identify Appellant. However, at trial on June 10, 2003, Julie explained that she was nervous on June 6 and did not want to look for Appellant in the courtroom. Julie claimed that she recognized Appellant later at the June 6 hearing, but did not want to interrupt the proceedings. At trial (on June 10), Julie identified Appellant as the driver she observed in 1993. Although Appellant pleaded guilty to public sexual indecency following the Julie C. incident, the jury was not informed that Appellant had been convicted.

¶ 10 The Jennifer M. incident occurred on May 13, 1999, when Jennifer was fifteen years old. Jennifer was walking home from school after she was sent home early, at approximately noon. As she walked home, a vehicle slowly passed by, and the driver stared at her. The vehicle turned around several times to pass her. Each time the vehicle passed, the driver stared at her. The final time the vehicle approached Jennifer, she could see that the driver's pants were down and he was masturbating. The driver said something to Jennifer that she could not recall. She was able to get the license plate number of the vehicle, which was registered to Appellant. Jennifer, was not present at the June 6, 2003 evidentiary hearing, but identified Appellant from a photographic lineup shortly after the incident and at trial in the instant case.

¶ 11 The Jennalee L. incident occurred on October 1, 1999, when Jennalee was thirteen years old. As she walked home from school, she was followed by a vehicle. The vehicle would occasionally park, and the driver would watch her. The vehicle eventually pulled up beside Jennalee, and the driver asked her for directions. As Jennalee looked into the vehicle, she saw that the driver was masturbating. Jennalee identified Appellant from a photographic lineup shortly after the incident, at the June 6 hearing, and at trial in the instant case.

¶ 12 The Robbie R. incident occurred on October 2, 1999. Robbie, who was thirty-six years old at the time, was riding her bicycle home from the movies. As she did so, she noticed a vehicle following her. After she got off her bike to walk it across the street, the vehicle pulled up beside her, and the driver asked for directions. As Robbie looked in the vehicle, she noticed that the driver was masturbating. Robbie identified Appellant from a photographic lineup shortly after the incident, at the June 6 hearing, and at trial in the instant case. Appellant was charged with the Jennifer M., Robbie R., and Jennalee L. incidents in a single action in 1999. He pleaded guilty to public sexual indecency on the count that involved Jennalee L. The jury was not informed of Appellant's conviction.

### B. Discussion

¶ 13 We review the admission of evidence pursuant to Rule 404(b) for an abuse of discretion. *State v. Van Adams*, 194 Ariz. 408, 415, ¶ 20, 984 P.2d 16, 23 (1999). Evidence of prior acts is admissible pursuant to Rule 404(b) if relevant and admitted for a proper purpose, such as to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. *See id.* The trial court ruled that all four prior acts were admissible to prove identity.[2] Appellant raises three arguments on appeal as to why some or all of this evidence should not have been admitted pursuant to Rule 404(b). First, Appellant contends that

the 1993 Julie C. incident was too remote in time. Second, Appellant contends that the Robbie R. incident was too dissimilar to the instant offenses. Third, Appellant contends that the probative value of all the prior acts was substantially outweighed by the danger of unfair prejudice.

### 1. The Remoteness of the Julie C. Incident

¶ 14 Appellant contends on appeal that the 1993 Julie C. incident was too remote, and he asserts that the trial court did not consider the remoteness of the incident. Although the State presented argument that the Julie C. incident and the other incidents were not too remote, Appellant never objected to admission of the Julie C. incident on the ground that it was too remote. Further, contrary to Appellant's assertion on appeal, the trial court expressly considered the remoteness of the incident.

¶ 15 Near the conclusion of the June 6 evidentiary hearing, the court requested that the prosecutor address the issue of the remoteness of the 1993 Julie C. incident. The prosecutor explained that, in the intervening period, Appellant had served two separate two-year sentences in prison. During the discussion of remoteness by the court and the prosecutor, Appellant never raised any objection based on remoteness, never joined in the discussion, and did not otherwise make any relevant comment. The court held that, because time was tolled while Appellant was in prison serving sentences totaling four years, the Julie C. incident was not too remote.

¶ 16 Ordinarily, we will not consider an evidentiary theory raised for the first time on appeal. *State v. Spreitz*, 190 Ariz. 129, 145, 945 P.2d 1260, 1276 (1997). Nonetheless, because the trial court considered the issue, we will review whether the court's determination regarding remoteness constituted error. However, because Appellant neither raised an objection nor otherwise contested the court's determination below, we review only for fundamental error. *See State v. Gendron*, 168 Ariz. 153, 154, 812 P.2d 626,

---

**2.** The trial court's minute entry reflects that the prior acts could be admitted to prove identity, intent, or knowledge. However, the trial court's oral pronouncement referenced only identity, and the jury was instructed only as to identity.

627 (1991) (stating that failure to raise an issue at trial waives all but fundamental error). Fundamental error reaches the foundation of the case, occurs when a defendant is deprived of a right essential to his or her defense, or is an error of such dimension that we cannot say the defendant had a fair trial. *See State v. King,* 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988).

¶ 17 Although remoteness between incidents affects the weight to be given testimony by the jury, it generally does not determine its admissibility. *Van Adams,* 194 Ariz. at 416, ¶ 24, 984 P.2d at 24. Further, the trial court could properly determine that the intervening periods of imprisonment tolled time. *See State v. Bible,* 175 Ariz. 549, 575, 858 P.2d 1152, 1178 (1993). Finally, as we have recognized, three subsequent similar incidents were committed between the time of the Julie C. incident and the offenses at issue, which makes the 1993 Julie C. incident seem even less remote. Appellant continued to commit offenses during that time period, indicating a continuum of conduct. Under these circumstances, we find no fundamental error in the trial court's failure to exclude the Julie C. incident as too remote.

### 2. The Similarity of the Robbie R. Incident

■ ¶ 18 Appellant contends that the Robbie R. incident was too dissimilar from the charged offenses to warrant admission pursuant to Rule 404(b). He argues that the incident was too dissimilar because Robbie R. was thirty-six years old and was not walking home from school, but was riding her bicycle as she returned home from a movie in the evening. Appellant raised this argument below; thus, we review for an abuse of discretion. *See Van Adams,* 194 Ariz. at 415, ¶ 20, 984 P.2d at 23.

¶ 19 "The identity exception to Ariz. R. Evid. 404(b) applies if identity is in issue, 'and if the behavior of the accused both on the occasion charged and on some other occasion is sufficiently distinctive, then proof that the accused was involved on the other occasion tends to prove his involvement in the crime charged.' " *State v. Stuard,* 176 Ariz. 589, 597, 863 P.2d 881, 889 (1993) (citing

Morris K. Udall et al., *Arizona Practice— Law of Evidence* § 84, at 183–84 (3d ed.1991)). Showing only that the crimes are of the same nature is insufficient to bring conduct within this exception. *Id.* "Instead, '[t]he pattern and characteristics of the crimes must be so unusual and distinctive as to be like a signature.' " *Id.* (quoting *Arizona Practice—Law of Evidence* § 84, at 185 (citation omitted)). In our comparison of the incidents, we examine the differences and the similarities of the offenses. *See id.* "While identity in every particular is not required, there must be similarities between the offenses in those important aspects 'when normally there could be expected to be found differences.' " *Id.* (quoting *State v. Roscoe,* 145 Ariz. 212, 217, 700 P.2d 1312, 1317 (1984) (quoting *State v. Jackson,* 124 Ariz. 202, 204, 603 P.2d 94, 96 (1979))).

¶ 20 However, not only is identity in every detail not required, it is not expected:

"Absolute identity in every detail cannot be expected. Where an overwhelming number of significant similarities exist, the evidence of the prior act may be admitted." *Roscoe,* 145 Ariz. at 218, 700 P.2d at 1318. The term "overwhelming" does not require a mechanical count of the similarities but, rather, a qualitative evaluation. Are the two crimes so similar, unusual, and distinctive that the trial judge could reasonably find that they bear the same signature? *Id.* at 217, 700 P.2d at 1317. If so, the evidence may be admissible and any dissimilarities go to its weight. *Id.* at 218, 700 P.2d at 1318.

*Bible,* 175 Ariz. at 576, 858 P.2d at 1179.

¶ 21 We find no error. A qualitative evaluation of the incidents indicates that they were sufficiently similar, unusual, and distinctive to permit the trial court to reasonably find that the Robbie R. incident bore the same "signature" as the charged offenses, and was sufficient to permit admission of the Robbie R. incident pursuant to the identity exception of Rule 404(b). The cases both involved one or more female pedestrians proceeding along a street on the way home. Appellant followed the victims in his vehicle and never left his vehicle. Appellant pulled his vehicle up to the victims and stopped

beside them. In both the Robbie R. incident and the charged incident, Appellant partially removed his clothing and masturbated while still driving his vehicle, and he apparently continued to do so while partially unclothed after he left each victim. Finally, we note that, although Robbie R. was thirty-six, Julie C. was thirty-two at the time of her incident, which was an offense to which Appellant pleaded guilty. Sufficient similarity existed to permit the trial court to admit evidence of the Robbie R. incident, and we find no abuse of discretion in the admission of that incident pursuant to the identity exception to Rule 404(b).

### 3. The Rule 403 Analysis

■ ¶ 22 Appellant also contends that the trial court did not properly balance the probative value of the four prior acts against the danger of unfair prejudice pursuant to Rule 403 of the Arizona Rules of Evidence. The record indicates that the trial court made a Rule 403 determination, although the record does not indicate that Appellant ever argued that the probative value of any of the prior acts was substantially outweighed by the danger of unfair prejudice. In fact, when the trial court requested argument in the context of Rule 403 near the end of the June 6 pretrial hearing to determine the admissibility of the prior acts, Appellant stated that he had nothing further to argue. Thus, it appears from the record that Appellant never made an argument pursuant to Rule 403 below and, therefore, we review only for fundamental error. *See Gendron,* 168 Ariz. at 154, 812 P.2d at 627.

¶ 23 The trial court made an express finding that, in the context of Rule 404(b), the probative value of the prior acts outweighed the danger of unfair prejudice or other factors stated in Rule 403. Nothing in the record suggests that this finding was fundamental error. Appellant's defense was that someone else committed the charged offenses. Therefore, identity was the only contested issue. The trial court could reason-

ably determine that all four prior acts were properly admissible pursuant to the identity exception of Rule 404(b) and that the probative value of the prior acts was not substantially outweighed by the danger of unfair prejudice. We find no fundamental error in the trial court's determination.[3]

### III. Application of Rule 404(c)

¶ 24 Appellant also contends that the trial court erred when it admitted the four prior acts pursuant to Arizona Rule of Evidence 404(c). He bases his contention on the premise that Rule 404(c) does not encompass the offenses of public sexual indecency to a minor or public sexual indecency. He concedes that, although he did object to admission of the prior act evidence pursuant to Rule 404(c) on other grounds, he never argued below that Rule 404(c) was simply inapplicable to the aforementioned offenses. Therefore, we review his contention only for fundamental error. *See Gendron,* 168 Ariz. at 154, 812 P.2d at 627.

### A. Rule 404(b) and the Jury Instruction

¶ 25 Because we have already determined that the trial court did not commit fundamental error when the court admitted evidence of the prior acts pursuant to Rule 404(b), it would initially appear that we need not determine whether the trial court erred in admitting the prior acts pursuant to Rule 404(c). Evidence inadmissible for one purpose may be admitted if admissible for another purpose. *Readenour v. Marion Power Shovel,* 149 Ariz. 442, 449, 719 P.2d 1058, 1065 (1986). This is true even if the party who offers the evidence specifies an incorrect purpose. *Id.*

¶ 26 However, because the trial court determined that the evidence was admissible pursuant to Rule 404(c), the court was required to, and did, instruct the jurors pursuant to Rule 404(c)(2) that they could consider the prior acts as evidence that Appellant had a character trait that predisposed him to

---

**3.** Although limiting instructions were given regarding use of the evidence in the context of Rule 404(c), no limiting instruction was given in the context of Rule 404(b). Appellant did not request such a limiting instruction and did not

object to its omission. No limiting instruction regarding evidence admitted under Rule 404(b) is required when none is requested. *See State v. Mott,* 187 Ariz. 536, 546, 931 P.2d 1046, 1056 (1997).

commit the offenses charged. Thus, if Rule 404(c) had no application, the jury was instructed that it could consider the evidence of the prior acts for an improper purpose. Accordingly, we must determine whether the trial court erred by admitting evidence of the prior acts pursuant to Rule 404(c). In making our determination, we examine the language and intent of Rule 404(c).

### B. Rule 404(c) Offenses

¶ 27 "Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except ... evidence of the aberrant sexual propensity of the accused [may be admitted] pursuant to Rule 404(c)...." Ariz. R. Evid. 404(a)(1). Rule 404(c) provides that, "[i]n a criminal case in which a defendant is charged with having committed a sexual offense ..., evidence of other crimes, wrongs, or acts may be admitted by the court if relevant to show that the defendant had a character trait giving rise to an aberrant sexual propensity to commit the offense charged." Thus, Rule 404(c) applies to criminal cases in which a defendant is charged with committing a "sexual offense." Rule 404(c)(4) provides that, as used in Rule 404(c), "the term 'sexual offense' is as defined in A.R.S. § 13–1420(C) [ (2001) ]." Section 13–1420(C) does not expressly list public sexual indecency to a minor or public sexual indecency as "sexual offenses."

¶ 28 Appellant argues that, because the offenses of public sexual indecency to a minor and public sexual indecency are not included in the list of "sexual offenses" under A.R.S. § 13–1420(C), they cannot be "sexual offenses" for purposes of Rule 404(c). Consequently, Appellant concludes that no basis existed for admission of the prior act evidence pursuant to Rule 404(c). Further, he argues that, because these crimes are not

"sexual offenses," the jury should not have been instructed regarding the use of such evidence pursuant to Rule 404(c)(2), and the trial court committed fundamental error when it, as required by Rule 404(c)(2), instructed the jury as to how it should consider the evidence of the prior acts.

¶ 29 Although the record does not reflect that Appellant argued before the trial court that Rule 404(c) was inapplicable because public sexual indecency is not a "sexual offense," it appears the court may have become cognizant of the issue at some point after the trial began. Three days before trial began, the trial court made its findings regarding the admissibility of the prior acts pursuant to Rules 404(b) and (c) and issued a detailed minute entry. Two days after trial, the court issued another minute entry. This minute entry again addressed in detail the court's findings regarding admissibility pursuant to Rule 404(c); however, this minute entry contained the court's express notation that, for evidence of a prior act to be admissible under Rule 404(c), the charged offense "must be a sexual offense." The trial court concluded, "There is no question that the current crime of Public Sexual Indecency is a sexual offense." In support of its conclusion, the trial court cited *State v. Gates ("Gates I")*, 25 Ariz.App. 241, 542 P.2d 822 (1975), an opinion issued before the promulgation of Rule 404(c).[4] In *Gates I*, we held that a prior act of indecent exposure was admissible to show that the defendant had a propensity toward sexual aberration.[5] 25 Ariz.App. at 244, 542 P.2d at 825. Appellant asserts that the trial court's ruling was error.

■ ¶ 30 We review *de novo* the interpretation of statutes and rules. *See State v. Kearney*, 206 Ariz. 547, 549, ¶ 5, 81 P.3d 338, 340 (App.2003); *see also Ariz. Dep't of Revenue v. Superior Court (Asarco Inc.)*, 189 Ariz. 49, 52, 938 P.2d 98, 101 (App.1997)

---

4. The *Gates I* opinion was approved by the Arizona Supreme Court. *See State v. Gates ("Gates III")*, 118 Ariz. 357, 576 P.2d 1357 (1978). A supplemental opinion, *State v. Gates ("Gates II")*, 26 Ariz.App. 75, 546 P.2d 52 (1976), was vacated on other grounds by the supreme court in that same decision. *See Gates III*, 118 Ariz. at 357–60, 576 P.2d at 1357–60.

5. Although the defendant in *Gates I* was not charged with indecent exposure, it was necessary to prove the defendant wore a mask for the purpose of escaping detection or identification in the course of the commission of the underlying offense of indecent exposure. *See* 25 Ariz.App. at 242, 542 P.2d at 823.

(stating that the interpretation of the rules of procedure parallels the interpretation of statutes). Our primary goal is to discern and give effect to the drafters' intent. *Kearney*, 206 Ariz. at 549, ¶ 5, 81 P.3d at 340 (citation omitted); *see also Bilke v. State*, 206 Ariz. 462, 464–65, ¶ 11, 80 P.3d 269, 271–72 (2003) (stating that the court must assign language its usual and commonly understood meaning unless the drafter clearly intended a different meaning). "To that end, we construe the statute's language, and if it is unclear, then consider its historical background, subject matter, context, effects, consequences, spirit, and purpose." *Kearney*, 206 Ariz. at 549, ¶ 5, 81 P.3d at 340 (citation omitted). Principles of statutory construction apply equally to rules promulgated by our supreme court. *Id.* (citing *Asarco*, 189 Ariz. at 52, 938 P.2d at 101).

¶ 31 Generally, if a statute specifies under what conditions it is effective, we may infer that it excludes all others. *State v. Fell*, 203 Ariz. 186, 189, ¶ 11, 52 P.3d 218, 221 (App.2002). However, the aforementioned rule of statutory construction is not substantive law and serves only as an aid in determining the drafters' intent, and it should not be applied when context and public policy contradict it. *See Forsythe v. Paschal*, 34 Ariz. 380, 383, 271 P. 865, 866 (1928); *Morris v. Ariz. Corp. Comm'n*, 24 Ariz.App. 454, 456, 539 P.2d 928, 930 (1975).

¶ 32 Despite Appellant's assertion to the contrary, we conclude that the language of Rule 404(c)(4), which states that "the term 'sexual offense' is as defined in A.R.S. § 13–1420(C)," does not necessarily preclude a definition more expansive than that provided in A.R.S. § 13–1420. We are unconvinced that, in promulgating Rule 404(c) and referencing A.R.S. § 13–1420(C), our supreme court intended to *narrow* the scope of charged "sexual offenses" for which evidence of other acts may be admitted to show that a defendant has a character trait giving rise to an aber-

rant sexual propensity to commit the offense charged. An examination of case law surrounding Rule 404(c) provides context and supports our conclusion.

¶ 33 We have long recognized a common-law propensity exception to the exclusion of evidence of prior bad acts in cases involving charges of sexual misconduct. The Arizona Supreme Court first articulated this exception in *State v. McFarlin*, 110 Ariz. 225, 517 P.2d 87 (1973):

> In those instances in which the offense charged involves the element of abnormal sex acts such as sodomy, child molesting, lewd and lascivious [conduct], etc., there is sufficient basis to accept proof of similar acts near in time to the offense charged as evidence of the accused's propensity to commit such perverted acts.

*Id.* at 228, 517 P.2d at 90. Consequently, when a defendant was charged with sodomy, child molestation, lewd and lascivious conduct, or other similar offenses, and Rule 404(b) did not apply to permit admission of other act evidence, the *McFarlin* rule permitted the introduction of evidence of other acts if those acts tended to show that the defendant had a "propensity to commit such perverted acts." *Id.*[6]

¶ 34 Further, as the trial court in this case recognized, this court held in *Gates I* that a prior act of indecent exposure was admissible to show that a defendant had a propensity toward sexual aberration. 25 Ariz.App. at 244, 542 P.2d at 825. The relevant portion of *Gates I* relied on *McFarlin, see Gates I*, 25 Ariz.App. at 244, 542 P.2d at 825, and, as we have noted, the supreme court approved the *Gates I* opinion in 1978. *See Gates III*, 118 Ariz. at 358, 576 P.2d at 1358. Thus, after 1978, no reasonable question existed that, under the *McFarlin* rule, the emotional propensity exception applied to the offense of public sexual indecency.[7]

---

6. In *State v. Treadaway*, 116 Ariz. 163, 568 P.2d 1061 (1977), our supreme court further clarified the *McFarlin* rule by examining the extent to which expert testimony would be required.

7. The legislature added the statute proscribing public sexual indecency, A.R.S. § 13–1403, in

1977, and the statute became effective on October 1, 1978. *See* 1977 Ariz. Sess. Laws, ch. 142, § 63. The legislature amended the statute in 1983 to include the offense of public sexual indecency to a minor. *See* 1983 Ariz. Sess. Laws, ch. 202, § 6.

¶ 35 In 1997, subsection (c) was added to Rule 404. The comment to the 1997 amendment provides that subsection (c)

is intended to codify and supply an analytical framework for the application of the rule created by case law in *State v. Treadaway,* 116 Ariz. 163, 568 P.2d 1061 (1977), and *State v. McFarlin,* 110 Ariz. 225, 517 P.2d 87 (1973). The rule announced in *Treadaway* and *McFarlin* and here codified is an exception to the common-law rule forbidding the use of evidence of other acts for the purpose of showing character or propensity.

Ariz. R. Evid. 404(c) (Comment to 1997 Amendment). Thus, the comment to the 1997 amendment indicates that subsection (c) of Rule 404 was designed to codify, as well as provide an application for, the *McFarlin* rule.

¶ 36 Appellant contends, however, that by referencing A.R.S. § 13–1420, Rule 404(c) narrowed the application of the previously recognized *McFarlin* rule. We disagree. Our supreme court has never stated that its goal was to narrow or eliminate the long-recognized common-law propensity exceptions to the exclusion of evidence of prior bad acts in cases involving charges of sexual misconduct. In fact, the clear intent of our supreme court in promulgating subsection (c) of Rule 404 was to "broaden[ ] the types of sexual offense cases in which other act evidence might be admissible." *State v. Aguilar,* 209 Ariz. 40, 48, ¶ 26, 97 P.3d 865, 873 (2004); *see also* Adam Kargman, *Three Maelstroms and One Tweak: Federal Rules of Evidence 413 to 415 and Their Arizona Counterpart,* 41 Ariz. L.Rev. 963, 985–86 (1999) (stating that new Rule 404(c) broadens the sweep of the common law exceptions); Crane McClennen & Robert L. Gottsfield, *Rule 404(b) and Rule 404(c); New Definitions, New Tests and New Rules,* Arizona Attorney, June 1998, at 31, 37 (stating that

new Rule 404(c) "expands" *Treadaway* and *McFarlin* ).

¶ 37 In *Aguilar,* the Arizona Supreme Court examined Rule 404(c) "to determine whether the aberrant sexual propensity exception to the prohibition against character evidence, codified in Arizona Rule of Evidence 404(c), encompasses sexual assaults against adults when the defendant claims the victims consented." 209 Ariz. at 47, ¶ 1, 97 P.3d at 866. Our supreme court ultimately concluded that, because A.R.S. § 13–1420(C)(3) included sexual assault as a "sexual offense," charges involving nonconsensual heterosexual contact between adults were included in the aberrant sexual propensity exception. *Id.* at 47–49, ¶¶ 24, 28, 97 P.3d at 872–74. The supreme court was not faced with the question we face here—whether common law exceptions not included in A.R.S. § 13–1420 still apply in light of Rule 404(c).[8]

¶ 38 Nevertheless, we find our supreme court's language in *Aguilar* helpful. Our supreme court noted that, "with the adoption of Rule 404(c), the types of sex offenses for which other act evidence may be admitted *are no longer restricted* to those offenses listed in *McFarlin,*" and held "that the sexual propensity exception of Rule 404(c) *is not restricted to cases in which the charges involve sodomy, child molestation, or lewd and lascivious conduct.*" *Aguilar,* 209 Ariz. at 47–49, ¶¶ 24, 28, 97 P.3d at 872–74 (emphases added). Thus, our supreme court's language indicates that Rule 404(c) was promulgated for the purpose of broadening, not narrowing, the types of cases in which other act evidence might be admissible. Given the clear policy behind Rule 404(c), narrowing the scope of offenses to no longer include the common law offenses previously recognized would lead to an unintended, if not absurd, result. *See Bilke,* 206 Ariz. at 464–65, ¶ 11, 80 P.3d at 271–72.[9] Thus, notwithstanding the fact that A.R.S. § 13–1420 does not ex-

---

8. The supreme court also addressed the procedure and findings necessary for a Rule 404(c) determination. *Aguilar,* 209 Ariz. at 49, ¶¶ 29–32, 97 P.3d at 874. Appellant raises no issue regarding the trial court's procedure and findings absent the issue whether the charged crimes qualify as "sexual offenses."

9. We also note that A.R.S. § 13–1403, which codifies the offenses of public sexual indecency and public sexual indecency to a minor, falls under the Arizona Criminal Code, Chapter 14, entitled "Sexual Offenses."

pressly include the offenses of public sexual indecency to a minor and public sexual indecency as "sexual offenses," the conduct engaged in by Appellant in committing the charged offenses, as well as the prior acts, falls within the core of conduct covered by Rule 404(c).

¶ 39 We therefore conclude that the aberrant sexual propensity exception to the prohibition against character evidence, codified in Rule 404(c), encompasses the crimes of public sexual indecency and public sexual indecency to a minor. Accordingly, the trial court did not err in admitting the prior act evidence pursuant to Rule 404(c) and in instructing the jury pursuant to Rule 404(c)(2).

### C. Admission of the Probation Officer's Testimony

¶ 40 Appellant also argues that the trial court erred when it admitted the testimony of a probation officer, Meri Romero, pursuant to Rule 404(c). The evidence consisted of statements made by Appellant during a pre-sentence interview. Again, we review only for fundamental error.[10] See Gendron, 168 Ariz. at 154, 812 P.2d at 627.

¶ 41 Romero interviewed Appellant after his conviction in the Jennalee L. incident. During the interview, Appellant stated that he was driving to work at the time of the incident and "wanted to relieve himself." When he saw a female, he began to masturbate in his car. However, he lost sight of the female before he finished masturbating. Appellant drove around until he saw Jennalee L., then continued to masturbate.

¶ 42 Romero's testimony was addressed during the pretrial hearing along with the prior acts. After considering Romero's presentence report, the trial court stated, "I am not sure I find that the presentence report writer Romero's summary is relevant or helpful or anything other than cumulative unless there is some—what I am going to do is to take under advisement whether I will

allow you to call Ms. Romero. . . ." Although the court made no reference to Rules 404(b) or (c) during its discussion of the Romero testimony, all previous discussion of the prior acts had been in the context of Rules 404(b) and (c). At the time Romero was called to testify at trial, the trial court ruled that her testimony was admissible pursuant to Rule 404(c).

¶ 43 Appellant's statements to Romero should not have been admitted. "Neither a pre-sentence report nor any statement made in connection with its preparation shall be admissible as evidence in any proceeding bearing on the issue of guilt." Ariz. R.Crim. P. 26.6(d)(2). Such statements are inadmissible even if offered in a subsequent proceeding that involves an unrelated incident. See State v. Burciaga, 146 Ariz. 333, 335, 705 P.2d 1384, 1386 (App.1985). However, as we have noted, Appellant did not raise this argument below and does not do so on appeal. Thus, we must determine whether the error in admitting Romero's statements was fundamental. See Gendron, 168 Ariz. at 154, 812 P.2d at 627.

¶ 44 We find no fundamental error. We have already determined that no error arose from the admission of evidence of the prior acts pursuant to Rule 404(c). Given that the jury heard from each of the victims in the four prior incidents as well as from the investigating officers, and given that Appellant did not contest that the Jennalee L. incident occurred, we cannot say that admission of this additional evidence regarding the Jennalee L. incident rose to the level of fundamental error. Under the totality of the circumstances, admission of the evidence did not go to the foundation of the case and, because the jury already knew about the four prior incidents, admission of the evidence did not deprive Appellant of a right essential to his defense. Finally, we cannot say that the error was of such magnitude that Appellant could not possibly have received a fair trial. See State v. Hughes, 193 Ariz. 72, 86, ¶ 62,

---

10. Although it is not clear, Appellant's argument appears to again be based on the assertion that, because the charged offenses were not "sexual offenses," Rule 404(c) had no application—an argument he has conceded he did not make before the trial court. Though we have determined that the charged offenses were "sexual offenses," we nonetheless address whether admission of this evidence constituted error. Appellant did object to the admission of Romero's testimony, but never stated any specific grounds.

969 P.2d 1184, 1198 (1998) (citing *Bible,* 175 Ariz. at 572, 858 P.2d at 1175). Thus, although Appellant's statements regarding the Jennalee L. incident should not have been admitted through Romero, we find no fundamental error.

### IV. *Denial of the Motions for Mistrial and to Strike*

■ ¶ 45 During direct examination of the detective who investigated the Julie C. incident, the prosecutor asked, "Detective, after your investigation, did you arrest the defendant?" The witness answered, "Yes, I did." Appellant did not object at that time. However, at the next break, the trial court noted that, after the examination of the detective, Appellant asked to approach and moved for a mistrial. In the alternative, Appellant moved to strike the answer and admonish the jury. Appellant renewed those motions at the break. The motions for mistrial and to strike the answer and admonish the jury were denied. When Appellant renewed his motion to strike and admonish the jury at the close of the State's case, the trial court noted the "school of thought that says it's foolish to try to unring the bell," and how attempts to do so actually emphasize evidence the jury may not have paid much attention to otherwise. The trial court denied the renewed motion.

¶ 46 Appellant argued before the trial court that his arrest following the Julie C. incident was irrelevant and that the State tried to bolster the victim's credibility by showing that the police believed her. Appellant renews these arguments on appeal. However, it is only on appeal that Appellant now argues the State also violated the trial court's ruling that the other act evidence could not reference Appellant's prior "convictions."

■ ¶ 47 Regarding the motion for mistrial, the trial court has broad discretion on motions for mistrial. The failure to grant a motion for mistrial is error only if it was a clear abuse of discretion. *State v. Murray,* 184 Ariz. 9, 35, 906 P.2d 542, 568 (1995). Further, the trial court's decision will be reversed only if it is "clearly injurious." *Id.* (quoting *State v. Walton,* 159 Ariz. 571, 581,

769 P.2d 1017, 1027 (1989)). The trial judge is in the best position to determine whether a particular incident calls for a mistrial because the trial judge is aware of the atmosphere of the trial, the circumstances surrounding the incident, the manner in which any objectionable statement was made, and the possible effect on the jury and the trial. *See State v. Koch,* 138 Ariz. 99, 101, 673 P.2d 297, 299 (1983); *State v. Brown,* 195 Ariz. 206, 209, ¶¶ 12–13, 986 P.2d 239, 242 (App.1999). Regarding the denial of the motion to strike, we likewise review for an abuse of discretion. *See State v. Amaya–Ruiz,* 166 Ariz. 152, 167, 800 P.2d 1260, 1275 (1990) (stating that a trial court's evidentiary rulings are reviewed for a clear abuse of discretion).

¶ 48 Assuming *arguendo* that evidence of Appellant's prior arrest was inadmissible as irrelevant, improper bolstering or in violation of the trial court's ruling, we find no abuse of discretion in the denial of the motion for mistrial. The trial court could properly determine that this single reference to an arrest did not merit a mistrial. The comment occurred in the midst of evidence of four prior incidents of public sexual indecency, all of which resulted in investigations of Appellant, and all of which resulted in his identification by victims. All four prior incidents were investigated by law enforcement officers who testified at trial in the instant case. Given the overall context in which the jury heard the reference to arrest, the trial court did not abuse its discretion when it refused to grant a mistrial based on this single reference.

¶ 49 Further, we also find no abuse of discretion in the denial of Appellant's motion to strike the testimony and admonish the jury. The trial court could reasonably determine that it was best not to call the jury's attention to the testimony and possibly emphasize it by striking the testimony and admonishing the jury to disregard it. Accordingly, we find no error in the trial court's denial of Appellant's motion for mistrial or his motion to strike the testimony and admonish the jury.

### CONCLUSION

¶ 50 For the reasons stated, we affirm Appellant's convictions and sentences.

CONCURRING: JAMES B. SULT, Presiding Judge, and PHILIP HALL, Judge.